## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

HARRY WOLFFRAM, et al.,

        Plaintiffs,

      v.                          Case No. 1:12cv961

SYSCO CINCINNATI, LLC,           Judge Michael R. Barrett

        Defendant.

### OPINION & ORDER

This matter is before the Court on the parties' cross-motions: 1) Defendant's Motions for Summary Judgment as to Harry Wolffram (Doc. 28), Joel Mounts (Doc. 29), and Michael McComas (Doc. 30), Plaintiffs' Combined Response in Opposition (Doc. 42), and Defendant's Replies (Docs. 43, 44, 45); as well as 2) Plaintiffs' Motion for Partial Summary Judgment (Docs. 33, 37), Defendant's Response in Opposition (Doc. 39), and Plaintiffs' Reply (Doc. 48).

For the reasons indicated herein, the Court GRANTS IN PART Defendant's motions as to Plaintiffs' abandoned claims, DENIES IN PART Defendant's motions as to Plaintiffs' remaining claims, and DENIES Plaintiffs' motion.

## I.    BACKGROUND

Plaintiffs Harry Wolffram, Joel Mounts, and Michael McComas all worked as forklift drivers in Defendant Sysco Cincinnati LLC's ("Sysco") Evendale Drive warehouse.  Each Plaintiff was a long-term employee: Wolffram, for approximately 22 years; Mounts, 24 years, and McComas, 27 years.

Defendant terminated both Wolffram and Mounts in 2011 for alleged poor performance, while it terminated McComas in 2012 after a forklift accident in which he was injured. McComas was later rehired and is a current employee of Sysco. Neither Wolffram nor Mounts have returned to Sysco.

Although it appears each Plaintiff, in the Second Amended Complaint (Doc. 5), brings claims for 1) disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and Ohio law; 2) age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and Ohio law, and 3) Family and Medical Leave Act (FMLA) interference and retaliation, it appears each has abandoned aspects of his case. Plaintiff Wolffram (52-years old) now solely alleges disability and age discrimination; Mounts solely alleges disability discrimination and retaliation, and FMLA retaliation; and McComas (57-years old) solely alleges age discrimination and retaliation, disability discrimination, and FMLA retaliation (Docs. 40, 43, 44, 45).[1] In any event, each Plaintiff still claims that Defendant unfairly considered productivity numbers against them, when other employees had developed a number of clever techniques to cheat the computerized productivity-monitoring system. As such, Plaintiffs contend to the extent Defendant based their terminations on their productivity, such proffered reason is merely pretext for unlawful discrimination.

Defendant denies engaging in any unlawful discrimination. Defendant maintains

---

[1] The Court finds Defendant's position well-taken that its motion for summary judgment should be granted as to Plaintiffs' abandoned claims. *Brown v. VHS of Mich., Inc.*, 545 Fed. Appx. 368, 372 (6th Cir. 2013). However, Defendant further challenges Plaintiff's request for punitive damages. Questions relating to punitive damages are not dispositive, and are appropriately addressed in a damages calculation if liability is determined.

Wolffram and Mounts were not meeting its productivity standards and this is why they lost their jobs.  It further maintains that after it realized it attributed McComas with too many accidents as a justification for firing him, it promptly reinstated him.

This matter is fully briefed, such that it is ripe for the Court's consideration.

## II.  **STANDARD**

Federal Rule of Civil Procedure 56(a), as amended on December 1, 2010, provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party.  *Id*. at 252.

## III.  **ANALYSIS**

Because the facts and claims of each Plaintiff differ slightly, the Court will consider each Plaintiff's case individually.   First up, Plaintiff Wolffram:

### A.  Harry Wolffram

Plaintiff Wolffram began working for Sysco in 1989.  In approximately 1997, Wolffram moved into a forklift operator position on the day shift.   Defendant's warehouse

has two sections: a freezer/refrigerator section and a "dry side" where non-perishables are stored.  Wolffram mostly worked in the cold section.  Sometimes, though, he worked "will call" which meant he could switch between sections, which required time for changing clothes.

Several years ago, Defendant installed an electronic system to monitor employee productivity.  Essentially, the system was designed to monitor the amount of time it takes for an employee to complete specific tasks, but allowing for "indirect time" to account for time performing tasks that are not part of the system.  An example would be restroom breaks.  For each task, Defendant also had a "preferred work method" that included a step-by-step breakdown for completing the task.

If an employee achieves an average weekly rating in the system of 100%, he is deemed to have achieved an average rating.  If an employee exceeds such benchmark, he receives a bonus payment.  An employee rating below 100%, however, is subject to corrective action.

Plaintiff Wolffram lost his employment with Sysco in 2007 after Defendant determined Wolffram was not meeting productivity standards.    Plaintiff grieved the discharge and Defendant reinstated him.    Plaintiff subsequently met the standards for many years.

In June 2011, Wolffram's productivity standards, according to the system, were again below average.  After Defendant wrote him up, Wolffram spoke with his supervisor Ted Twyman and explained that he was diabetic and therefore required more "indirect time" for restroom breaks.

In August 2011, Defendant wrote Plaintiff Wolffram up again regarding productivity,

4

to which Plaintiff responded with a grievance citing his diabetes. Plaintiff further contends he was not given "indirect time" for clothing changes he made while working "will call" between sections of the warehouse or for transfer time between the warehouses. Defendant alleges it engaged Plaintiff in retraining sessions, but maintains Wolffram's performance did not improve. Defendant terminated Wolffram, again, in September 2011.

Wolffram contends that other employees found ways to "game" the computerized system to make their productivity look higher. Essentially, other employees allegedly found ways to skip steps in the "preferred work method," thus getting credit for completing all steps in the process. Among the techniques to cheat– "home slot transfers" (skipping the consolidation of pallets of product); "tugging" (moving product from the dock closer to the put-away slot during indirect time, so that it appeared they moved it faster when back on the clock); and scanning batches at put-away (picking up multiple pallets from the dock, while only scanning one into the system, so the others appear to arrive immediately when scanned into the system upon their arrival to put-away). Although in its briefing Defendant suggests that this conduct is *not* cheating (Doc. 39), there is no dispute that Defendant's Vice President of Operations, Jim Ward, testified that cheating the productivity system would be considered dishonesty and theft. Such conclusion makes sense because productivity scores are linked to both remuneration and discipline. The record further shows that Defendant had fired employees in the past for engaging in similar practices that amounted to keeping some of their work from being timed by the system.

Wolffram contends that similarly-situated younger and non-disabled forklift drivers with whom he worked were treated differently than he was, because they cheated the system and were not fired. In his view, he complied with the system, Defendant would not

5

accommodate his need for "indirect time," and he was fired.   Wolffram brings claims for disability discrimination and age discrimination.

### 1.  Wolffram's Disability Discrimination Claim

The Americans with Disabilities Act ("ADA") was enacted to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment."  42 U.S.C. § 12112(a).

In order to present a *prima facie* case of disability discrimination, absent direct evidence, Wolffram must establish 1) that he was disabled, 2) he was qualified for the position, with or without reasonable accommodation, 3) he suffered an adverse employment decision, 4) Defendant knew or had reason to know of his disability, and 5) he was replaced by someone outside the protected class or "similarly-situated employees were treated more favorably."  *Whitfield v. Tenn.*, 639 F.3d 253, 258-59 (6th Cir. 2011), *Hopkins v. Electronic Data Sys.*, 196 F.3d 655, 660 (6th Cir. 1990).[2]     Disability

---

[2] Judge Sutton, in *Lewis v. Humboldt,* 681 F.3d 312 (6th Cir. 2012) cautioned that courts should be careful not to conflate rules applicable to the ADA, the Rehabilitation Act, the ADEA, and Title VII.  It is clear that under the Rehabilitation Act, a five-prong *prima facie* case applies. See e.g., *Jones v. Potter,* 488 F.3d 397, 404 (6th Cir. 2007).  As recently as early this year the Sixth Circuit has articulated a three-pronged case in an ADA case.  *Mobley v. Miami Valley Hospital*, No. 14-3665, 2015 U.S. App. LEXIS 3105, *8 (6th Cir. February 25, 2015); see also *O'Brien v. Michigan Department of Corrections,* 592 Fed. Appx. 338 (6th Cir. 2014), *Blazek v. City of Lakewood, Ohio,* 576 Fed. Appx. 512, 516 (6th Cir. 2014), and *Demyanovich v. Cadon Plating & Coatings, LLC,* 747 F.3d 419, 433 (6th Cir. 2014).  In this instance, the Court finds that Plaintiff could show a causal link between his disability and his termination if he can show similarly-situated non-disabled employees were treated differently.  As such, the court will use the parties' five-pronged *prima facie* case in its analysis.

discrimination under Ohio law is evaluated under the same framework as claims brought under the ADA, so the court consideration's will apply to both Plaintiff's Ohio and federal claims. *Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 201 (6th Cir. 2010).

Wolffram has established that diabetes is a disability, as it substantially impairs the major life function of the endocrine system. 29 C.F.R. § 1630.2(j)(3)(iii). The fact that he worked successfully for more than ten years as a forklift driver shows that he was objectively qualified for the job. *Wexler v. White's Fine Furniture*. 317 F.3d 564, 575-6 (6th Cir. 2003). Wolffram suffered an adverse employment decision when he was terminated. Although Defendant protests that it did not receive "documentary" evidence of his diabetes until after he had been terminated, the record shows that at least Plaintiff's supervisor Ted Twyman knew of Wolffram's condition when Plaintiff requested an accommodation for his diabetes. *Calvert v. Amerigold Logistics, LLC,* No. 10-02765, 2012 U.S. Dist. Lexis 135069 *5 (W.D. Tenn. Sept. 21, 2012).

The parties devote most of their briefing to the final prong of a disability case: whether Wolffram was replaced by a non-disabled person, or whether similarly-situated forklift drivers were treated differently. Defendant contends Wolffram has not named an individual who is outside the protected class who replaced him, and that, because positions are filled via a bargained-for bidding process, he cannot show Defendant had any discretion as to who replaced him. On the other hand, Wolffram focuses his argument in response on whether similarly-situated forklift drivers were treated differently. He contends that the record shows at least three other non-disabled forklift workers, Mike Gabbard, Rich Kilgore, and Lou Vaccariello cheated the productivity system with "home slot transfers;" while Gabbard, Vaccariello, Mark Shelton and Dean Herron used "tugging;" and Shelton,

7

Kilgore and Vaccariello scanned batches at put-away.   Plaintiff contends he was subject to the same system, did not cheat, needed an accommodation (more "indirect time" for his diabetes), and was terminated.   In Plaintiff's view, he was therefore treated differently as Defendant turned a blind eye toward others' abuse of the monitoring system while selectively enforcing the same system against him.

Defendant suggests in its briefing that Plaintiff could have engaged in the same conduct he alleges is cheating–and that such conduct did not necessarily amount to cheating.   Defendant further argues that Plaintiff cannot show that only non-disabled individuals were given the opportunity to "cheat," and that he offers no evidence that the alleged "cheaters" were not disabled.   Moreover, contends Defendant, Plaintiff never personally observed or reported such "cheating" while he was working for Sysco.

As the Court must make inferences in Plaintiff's favor with respect to Defendant's motion, it finds that a reasonable jury could find Defendant treated him differently than other employees who did not have diabetes.   Plaintiff explicitly requested more time for restroom breaks because of his condition.  He was denied such time.   Moreover the Court finds no genuine dispute that the alleged conduct Plaintiff complains about, should it have occurred, amounted to cheating the productivity system.   Those who allegedly cheated the system were rewarded with better productivity numbers, while the Plaintiff, on the other hand, was penalized for needing accommodation for his disability.   The Court concludes therefore Plaintiff Wolffram has adequately pleaded a *prima facie* case of disability discrimination.

The burden now shifts to Defendant to proffer a legitimate non-discriminatory reason for Plaintiff's termination, which it claims here is his low productivity numbers in the system.

8

Once a legitimate reason has been put forth by the defendant, the burden falls on the plaintiff to rebut the reason offered and show pretext by demonstrating that (1) the employer's stated reason for termination has no basis in fact; (2) the reason offered for termination was not the actual reason; or (3) the reason offered was insufficient to explain the employer's action.  *Spengler*, 615 F.3d at 493 (*citing Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (*citing McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)) *(overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

Plaintiff Wolffram claims he can show by unrefuted facts that Defendant's reason is pretext, such that in his view he is entitled to summary judgment (Doc. 42).  First, he argues the Court can and should consider the arbitration decision regarding his termination, in which the arbitrator took into consideration Plaintiff's diabetes and concluded Defendant did not have "just cause" for the termination (Doc. 48).   As "just cause" is a prerequisite to termination at Sysco, Plaintiff contends he has shown Defendant's proffered reason has no basis in fact.

Second, Plaintiff Wolffram contends because Sysco did not grant him indirect time during a week in August 2011 either for numerous clothing changes when he was doing "will call" runs or for transfers, his productivity rating was skewed to the negative.  As such, he contends he did not have a low enough productivity rating to merit termination, and therefore Sysco's proffered reason, again, was false and had no basis in fact.

Third, Plaintiff contends because Defendant did not apply its disciplinary policies uniformly, that is, not disciplining the alleged cheaters while disciplining him, discrimination

9

was the true reason for his termination.   (Doc. 48, *citing Kimble v. Wasylyshyn,* 439 Fed.

Appx. 492, 499-500 (6th Cir. 2011); *Lamer v. Metaldyne Co., LLC*, 240 Fed. Appx. 22, 33

(6th Cir. 2007)).

Having reviewed this matter, the Court finds genuine issues of fact as to whether

other employees were engaging in cheating, whether Plaintiff accumulated a low enough

productivity rating to merit termination, and whether Defendant applied its disciplinary

policies uniformly.   As such, the Court disagrees with Plaintiff's contention that he is

entitled to summary judgment based on "unrefuted facts."   Rather, Plaintiff is entitled to

have his disability discrimination claim, for which he has established a *prima facie case*,

and for which he has adequately raised a question regarding pretext, placed before a jury.

### 2.  Wolffram's Age Discrimination Claim

In order to establish a *prima facie* case of age discrimination, absent direct

evidence, a plaintiff must show 1) he is over forty; 2) he was qualified for the position; 3)

he suffered an adverse employment action; and 4) he was replaced by a substantially

younger employee, or additional evidence shows that the employer was motivated by

plaintiff's age in making the decision to fire him.   *Hagedorn v. Veritas Software Corp.,* 129

Fed. Appx. 1000, 1002 (6th Cir. 2005).   An age discrimination plaintiff may also establish

the fourth prong of his *prima facie* case by presenting evidence that he was treated less

favorably than a similarly situated younger employee.   *Id.*

There is no genuine dispute as to the first three prongs of Wolffram's case as he

was 52 years old, qualified, and was terminated.   The issue then is whether Wolffram can

show he was treated less favorably than a substantially younger employee.   In the Sixth

Circuit, a difference of more than six years is considered substantial. *Grosjean v. First Energy Corp.,* 349 F.3d 332, 340 (6th Cir. 2003).

Although Defendant proffers evidence that many of the alleged "cheater" forklift drivers were Plaintiff's age or older, Plaintiff proffers evidence that one alleged "cheater," Mark Shelton, was nine years younger than Plaintiff. Because Shelton allegedly "tugged" and "scanned at put-away," he allegedly gamed the same system that was enforced against Plaintiff, who as a matter of law was substantially older than Shelton. As such, the Court concludes Plaintiff has established a *prima facie* case of age discrimination.

As above, with regard to Plaintiff's disability discrimination claim, after he establishes a *prima facie* case, Defendant may proffer a legitimate non-discriminatory reason for Plaintiff's termination, which again, it claims here is his low productivity numbers in the system. As the same analysis above applies showing a jury could reject Defendant's reason as pretext, Plaintiff's age discrimination claim survives Defendant's motion for summary judgment. Similarly, as the same issues of fact apply regarding Plaintiff's showing of pretext, Plaintiff is not entitled to summary judgment, but rather, he is entitled to have his age claim placed before a jury.

## B. Joel Mounts

Plaintiff Joel Mounts started working for Sysco in 1987, and within approximately a year began working as a forklift driver (Doc. 5). He continued to do so for more than twenty years.

In 2001, Plaintiff was diagnosed with major depressive disorder (Doc. 29). He nevertheless continued to work for Defendant until 2006 when he was terminated for attendance-related issues. Mounts grieved the discharge and was reinstated.

11

Plaintiff took a number of Family and Medical Leave Act ("FMLA") and disability leaves during his tenure with Defendant, for depression, and also for recovery from a motorcycle accident. In 2010, Mounts took intermittent leave for his condition. Mounts contends that management and co-workers teased him about taking such leave, which Sysco officials complained almost always happened on a Friday.

In summer 2010, Mounts noticed a discrepancy that Defendant was making in his rating system. Mounts thus filed a grievance on June 14, 2010 (Doc. 42)[3]. Mounts complained that the productivity write-ups were discrimination and harassment based on his age and medical status.[4] He further complained that Defendant had no respect for employees with injuries and illnesses, and complained about being teased for taking FMLA leave. Mounts was suffering at the time from stress, acute anxiety, and depression, so he went on short-term disability, which Defendant counted as FMLA leave.

By December 2010, Mounts returned from his leave. Defendant alleges Mounts' performance suffered upon his return and that it engaged in efforts to provide training to help him improve (Doc. 29). Mounts contends he reported conduct by others that constituted cheating at about this time, although he did not name names when he made such report. In early 2011, for example, Mounts raised cheating and discrimination issues to Defendant's Vice President of Operations, Jim Ward, who in response raised his voice, told Mounts he was "disappointed," turned away, and then slammed the door to his office

---

[3] Mounts would later file similar grievances on May 30, 2011, June 14, 2011, and June 26, 2011.

[4] According to Defendant, Mounts took his breaks at different times than the other forklift operators, and this affected the company's ability to calculate his productivity averages. Sysco contends it warned Mounts to take his breaks with the others, he did so for one week, but then returned to taking his breaks at different times.

(Doc. 42).

Because Mounts had no more available FMLA time, he took an "emergency vacation" in February or March 2011, which he later attributed to his depression.  Also during this period of early 2011, Defendant allowed Plaintiff to leave work early on Fridays to see a doctor for treatment for his low-testosterone condition.[5]   On June 24, 2011, Mounts again requested FMLA paperwork to take leave, and Defendant's Vice President of Human Resources, Michele Giordano, notified him he had not worked the requisite number of hours to requalify (Doc. 29).

According to Defendant, during the first half of 2011, Mounts still did not meet its system productivity standards.   Mounts received two write-ups in February, discipline in May, and two more write-ups in June regarding productivity.  Defendant contends it provided him with retraining rather than another write-up after Mounts failed to meet productivity standards in early July.  After retraining, Mounts did not meet the standards once again, for the week ending July 23.   Defendant then terminated Plaintiff's employment.

On December 14, 2012, Plaintiff Mounts joined Wolffram in filing their original Complaint in this matter (Doc. 1).   As it stands at this juncture, Mounts alleges claims for disability discrimination, disability retaliation, and FMLA retaliation.

---

[5] Defendant argues (Doc. 29) that such treatment had nothing to do with Plaintiff's disability.  The Court takes judicial notice of the fact that low testosterone in males can be related to depression and problems concentrating.  *See* http://www.mayoclinic.org/healthy-living/mens-health/in-depth/male-menopause/art-20048056?pg=2

### 1. Mounts' Disability Discrimination Claim

Because Mounts suffers from severe depression and anxiety, he is disabled within the meaning of the ADA, as his condition substantially limits his major life activities of sleeping and concentrating. 29 C.F.R. § 1630.2(h)(2). Because he worked as a forklift driver for more than twenty years, there is no doubt he was objectively qualified for such work. Mounts suffered an adverse employment action when he was terminated; and Sysco knew about his condition due to his FMLA leave and his grievances.

The remaining question is whether, like Wolffram above, Mounts can either show he was replaced by a person outside the class or similarly-situated employees were treated more favorably. As above, Mounts only claims he was replaced by the next person on the seniority list who wanted his job. The Court does not find such claim adequate to show Mounts was replaced by a person outside the class. However, as above, the Court finds that Mounts, like Wolffram, has shown that he was treated differently than other forklift drivers who allegedly gamed the system, while he did not.

Defendant raises nearly identical arguments regarding its proffered legitimate justification for Mounts' termination, as it did above for Wolffram (Doc. 44). As above, the Court finds genuine issues of fact as to whether other employees were engaging in cheating, whether Plaintiff accumulated a low enough productivity rating to merit termination, and whether Defendant applied its disciplinary policies uniformly. As such the Court again disagrees with Plaintiff's contention that he is entitled to summary judgment based on "unrefuted facts." However, as Plaintiff has shown a *prima facie* case and raised genuine questions as to Defendant's proffered reason for his termination, the Court also also rejects Defendant's motion for summary judgment. Plaintiff is entitled to have his

disability discrimination claim placed before a jury.

### 2. Mounts' Disability Retaliation Claim

Mounts also raises the claim that Sysco retaliated against him for complaining with regard to his disability. To state a claim for disability retaliation Mounts must establish that 1) he engaged in protected activity; 2) Sysco knew of the protected activity; 3) Sysco took adverse action against him; and 4) there was a causal relationship between the protected activity and the adverse action. *Gribcheck v. Runyon,* 245 F.3d 547, 550 (6th Cir. 2001).

Here the record shows Mounts filed four grievances complaining that the write-ups he received were discrimination based on his age and medical status. Mounts also complained that Defendant allegedly had no respect for employees with injuries and illnesses. The record further shows that Defendant's managers, including Jim Ward, were aware of Mounts' complaints, and that soon after, Mounts was fired. As such, Plaintiff has adequately raised a question as to the first three prongs of his disability retaliation case.

Finally, the Court finds Plaintiff has also raised a genuine issue as to whether there was a causal connection between his complaints and his termination. Ward raised his voice at Mounts after Mounts complained about discrimination and cheating issues. Moreover, Mounts' termination in late July 2011 came within only weeks of *three* grievances based on age and medical status. Mounts also raises questions about whether he was treated differently than other employees "cheating the system." The Court concludes the record provides adequate evidence for a jury to consider Plaintiff's claim that he was retailated against for complaining about disability discrimination.

### 3. Mounts' Complaint for FMLA Retaliation

Finally, Mounts raises the claim that Defendant retaliated against him for engaging

15

in protected FMLA conduct.  In order to establish a *prima facie* case for FMLA retaliation, Mounts must show that 1) he engaged in activity protected by the FMLA; 2) Sysco knew he was exercising his protected rights; 3) Sysco took an adverse employment action; and 4) there was a causal connection between Plaintiff's protected FMLA activity and the adverse action.  *Hall v. Ohio Bell Tel. Co.,* 529 Fed. Appx, 439-440 (6th Cir. 2013).   The record here shows that Mounts engaged in protected activity by requesting FMLA leave, that Giordano and Ward were aware of Mounts' request, and that within only a few days Mounts was terminated.

Defendant contends it always gave Mounts FMLA leave when he requested it.  It further contends Mounts did not qualify for such leave when he asked for it in June 2011. Defendant specifically challenges Plaintiff to proffer authority for the proposition that requesting FMLA leave when one is ineligible for it constitutes protected activity (Doc. 44).

Plaintiff responds by citing *Welty v. Honda of America Mfg., Inc.*, 411 F. Supp. 2d 824, 827-28 (S.D. Ohio, 2005)( Frost,J.) which squarely addresses the question.  In *Welty,* Judge Frost stated "the 'elgible employee' requirement is not an absolute bar against individuals seeking to assert FMLA *rights* even if they do not currently qualify for FMLA *leave." Id.* at 827.  Judge Frost continued, "[s]uch a holding recognizes that the policy underlying the Act governs its language so as to bar inane results."  *Id*.

The Court find the reasoning of *Welty* directly on point, in that Plaintiff Mounts should not be found incapable of bringing a FMLA retaliation claim based on the theory that he was not eligible at the time he requested such leave.   A request for FMLA leave is protected activity.

Accordingly, the Court finds no question that Plaintiff has established a *prima facie*

case for FMLA retaliation, as he engaged in protected activity in close temporal proximity to his termination.   A reasonable jury might therefore infer causation between his request for FMLA leave and his ultimate termination.  Moreover, the record shows that none of the comparators that he alleged were cheating the system (Gabbard, Shelton, Kilgore, Herren, and Vaccariello) had recently taken any FMLA leave, and one might view Plaintiff as being treated differently.

The burden then shifts, as above, to Defendant to provide a legitimate justification for its action.   The analysis above also applies showing that Defendant's proffered reason, Mounts' alleged performance problems, could be viewed as pretext, as a fact-finder might conclude that it enforced its tracking system differently for other forklift drivers who were not clamoring for FMLA rights.   For the same reasons articulated above, neither party is entitled to summary judgment, but Plaintiff is entitled to have a jury evaluate his claim.

## C.  Mike McComas

The final Plaintiff in this matter is Mike McComas, who like the others was a long-term employee of Defendant when he faced adverse action.  Unlike Wolffram and Mounts, McComas has been reinstated as an employee.  Similarly to the other Plaintiffs, he has complained of other forklift drivers allegedly cheating the productivity system–but unlike the other Plaintiffs, Defendant attributed his termination to an accident.

McComas started working for Sysco in 1985.  After a few years working for the company he became a forklift driver.   According to Sysco, McComas has never been a happy employee, and always considered himself treated unfairly, even before his diagnoses for diabetes and high blood pressure.   In fact, Plaintiff McComas was subject to some one hundred fifty disciplinary actions and counselings over his twenty-seven years

of employment—some of which Defendant indicates were related to failing to keep up to productivity standards (Doc. 30).  McComas takes a different view, stating he filed a grievance related to age discrimination in July 2011, contending younger, non-disabled employees with no history of illness were cheating the productivity standards and getting away with it (Doc. 37).  McComas claims at a meeting about his grievance Jim Ward refused to even discuss the issue, and walked out (*Id.*).

On March 5, 2012, McComas was involved in a serious forklift accident.  McComas, 57 at the time, turned left into Row W at the warehouse and collided with a stationary forklift.  McComas does not believe he was at fault for the accident and contends the other forklift driver, Scott Munch, 40, parked his forklift incorrectly and thus created the danger.

As a result of the collision, the cab of McComas' forklift hit the forks of the other forklift, and a fork punctured McComas' right leg.   After the accident, an ambulance was called; McComas was transported to the hospital, where he stayed a number of days before being released with his leg in a cast.   McComas went on FMLA leave.

Defendant filed a workers' compensation claim for Plaintiff in relation to the injury. As such Plaintiff received worker's compensation wages while he was off work, and his medical bills were covered.   When Plaintiff was released to return to light-duty work in June 2012, Sysco informed Plaintiff that he was terminated for causing the accident.

McComas filed a grievance, during which Sysco admitted it made a mistake by attributing more than one accident to Plaintiff (Doc. 37).  Sysco reinstated his employment on September 12, 2012.   Thus, McComas was unemployed, while still on workers' compensation, for about four months before he was reinstated.

McComas returned to work after his reinstatement on a light duty assignment.  By

January 2013, McComas had recovered from his injury and returned to his forklift position. Upon his return McComas met productivity standards and was not disciplined again.

McComas brings claims for age discrimination and retaliation, disability discrimination, and FMLA retaliation.   The Court will consider his claims seriatum.

### 1. McComas' Claim for Age Discrimination

There is no real question that McComas establishes the first three prongs of his age discrimination case: he was 57 years old at the time of his termination, his termination constituted an adverse employment action,[6] and his long tenure with Sysco shows he was qualified for the work, which he still currently does, as a forklift driver.   For the final prong, McComas must show he was treated less favorably than a similarly-situated substantially younger employee.   McComas contends he was treated less favorably than Scott Munch, the 40-year old forklift driver with whom he had the accident.  Because McComas argues he faced termination while Munch faced no consequence for the accident, he claims he can meet such test.[7]

The record shows that Defendant's safety rules state that any accident that results in an injury to an employee "caused at least in part by the employee" will mean immediate suspension without pay.  McComas contends that Munch was at least in part responsible

---

[6] The parties devote substantial briefing as to whether Plaintiff suffered an adverse employment action.  Defendant contends as Plaintiff was rehired he suffered no adverse action. The Court finds that four months off work after a termination constitutes an adverse action. *White v. Burlington Northern & Santa Fe Ry,* 364 F.3d 789, 795 (6th Cir. 2004)(en banc)(a thirty-seven day suspension with full back pay is an adverse employment action).

[7] McComas also contends that yet another forklift driver, Robert Morales, who was 40, had accidents and was treated differently.  However, the Court finds well taken the Defendant's position that the record shows Morales was simply held accountable to the policy: when Morales had an accident causing an injury he was discharged as his cumulative accident history translated into points that were counted against him (Doc. 45).

for his injury because he did not park his forklift correctly. Munch was not suspended or otherwise disciplined, whereas McComas was terminated.

Should a jury agree with McComas that Munch was partially responsible for the accident for failure to park his forklift correctly, then it would be reasonable to question why Defendant did not enforce its policy against Munch regarding accidents resulting in injuries. The Court therefore finds that a reasonable jury might conclude that McComas was treated more harshly than a much younger employee, Munch, and thus that Plaintiff meets his *prima facie* case for age discrimination.

As above, after Plaintiff establishes a *prima facie* case, Defendant may proffer a legitimate non-discriminatory reason for Plaintiff's termination. Here, Sysco indicates it terminated Plaintiff for his accidents. Plaintiff responds that as the record shows he did not have the requisite amount of accidents—as evidenced even further by Sysco admitting it made a mistake and reinstating him—that the proffered reason has no basis in fact, and is a pretext for the real reason for his termination, age discrimination (Doc. 33). Having reviewed this matter, the Court finds it appropriate to allow a jury to consider whether Defendant's proffered reason is true in light of the fact that it did not suspend Munch, should the jury find that Munch was partially responsible for the accident. As such, there is a factual determination for the jury, and neither party is entitled to summary judgment on Plaintiff's age discrimination claim.

### 2. McComas' Claim for Age Retaliation

Mccomas grounds his retaliation claim in the theory that he complained about age discrimination in the July 2011 meeting with Jim Ward and Michele Giordano, which is protected conduct. He contends his termination, nearly a year later on June 28, 2012,

constitutes adverse action. And finally, he claims he can show a causal connection based on temporal proximity of his meeting and his termination.

For temporal proximity alone to constitute evidence of causation, the time between the protected activity and the adverse action must be less than six months. *Mickey v. Zeidler Tool and Die Co.,* 516 F.3d 516, 524 fn.3 (6th Cir. 2008). For greater amounts of time there must be something more indicating causation. Plaintiff here contends that Ward's strongly negative reaction to his complaint about age discrimination in the July 2011 meeting further shows causation.

The Court finds Plaintiff's case for age retaliation a thin one, as a jury might find Ward's strongly negative reaction grounded in any number of reasons. However, because a jury might find the response to a specific age discrimination complaint in the context here where a younger forklift driver was allegedly cheating and getting away with it, the Court finds an adequate *prima facie* case of age discrimination.

The Court's analysis with regard to Defendant's proffered legitimate nondiscriminatory reason for Plaintiff's termination is exactly as that articulated immediately above in consideration of Plaintiff's age discrimination claim. Accordingly, the Court denies summary judgment for both parties and finds Plaintiff's age retaliation claim appropriate for a jury.

### 3. McComas' Claim for Disability Discrimination

McComas has established that he has a disability, diabetes. 29 C.F.R. § 1630.2(j)(3)(iii). The record is clear that he was qualified for his position, and that he suffered an adverse action when he was terminated. As above, McComas has proffered evidence that a jury could find shows Scott Munch, who was not disabled, was treated

21

more favorably.   As such, the Court concludes McComas' disability claim is appropriate for a jury's consideration.

### 4.  McComas' Claim for FMLA Retaliation

McComas engaged in protected activity when he went on FMLA leave in March 2012 after his accident.   Sysco knew McComas had also taken leave in 2010, and that he complained about discrimination in 2011.   McComas suffered an adverse action when he was terminated.    Finally, there was temporal proximity between his leave and his termination, and other employees with no FMLA record were treated more favorably. Accordingly, Plaintiff McComas' FMLA claim should go before a jury.

## IV.    CONCLUSION

Based on the foregoing, the Court hereby finds that:

1.    Plaintiffs' Motion for Summary Judgment (Doc. 33) is **DENIED**;

2.    Defendant's Motions for Summary Judgment (Docs. 28, 29, 30) are **DENIED in PART and GRANTED in PART**;

   a.    Defendant's Motions are DENIED as to Plaintiff Wolffram's FMLA disability and age discrimination claims; Plaintiff Mounts' disability discrimination and retaliation and FMLA retaliation claims; and Plaintiff McComas' age discrimination and retaliation, disability discrimination, and FMLA retaliation claims; and

   b.    Defendant's Motions are GRANTED as to the balance of Plaintiffs' claims which Plaintiffs have abandoned.

**IT IS SO ORDERED.**

_____    _/s/ Michael R. Barrett_____
        Michael R. Barrett, Judge
        United States District Court

22